# United States Court of Appeals for the Federal Circuit

---

**NYLES DUNCAN,**
*Petitioner,*

v.

**DEPARTMENT OF THE AIR FORCE,**
*Respondent.*

---

2011-3053

---

Petition for review of the Merit Systems Protection Board in Case No. NY0752100081-I-1.

---

Decided: March 29, 2012

---

ANDREW L. MCNAMARA, Tully Rinckey, P.L.L.C., of Albany, New York, argued for petitioner. Of counsel were MATHEW B. TULLY and STEVEN L. HERRICK.

DOUGLAS T. HOFFMAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director. Of counsel on the brief was NINA R. PADALINO, Captain, United States Department of the Air Force, of Washington, DC.

Before RADER, *Chief Judge*, O'MALLEY, and REYNA,
*Circuit Judges*.

RADER, *Chief Judge*.

The Merit Systems Protection Board ("Board") held that as a matter of law the petitioner Nyles Duncan had not provided sufficient evidence to substantiate his claim. Because, under the facts of this case, Mr. Duncan failed to offer sufficient evidence to support his claim, this court affirms.

I.

Federal employees are entitled up to 15 days each year of military leave to attend training as a member of a reserve of the armed forces (*e.g.*, the Air Force) or member of the National Guard. 5 U.S.C. § 6323(a)(1). In *Butterbaugh v. Dep't of Justice*, this court held that federal agencies cannot charge military leave on non-workdays (*e.g.*, weekends). 336 F.3d 1332, 1338-39 (Fed. Cir. 2003). Since that decision, many petitioners have filed *Butterbaugh* claims seeking compensation for the charging of non-workdays against military leave.

Here, Mr. Duncan worked as a civilian for the Department of the Air Force until his retirement in 2005. From 1980 to 1998, Mr. Duncan was also in the Air Force Reserve. To meet his reserve obligation, he performed 12 days each year of active duty plus additional duty for training.

In 2009, Mr. Duncan filed a *Butterbaugh* claim with the Board. Mr. Duncan alleged that the Air Force had charged him military leave on non-workdays in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), causing him to

exhaust his military leave and therefore to use his annual leave to meet his reserve obligation. At the outset, he alleged that the Air Force improperly charged him with military leave for 38 days on various weekends from July 26, 1980 to March 8, 1998. Because he had to take military leave for those non-workdays, he prematurely consumed the 15 days of military leave allotted to him each year. Therefore, Mr. Duncan alleged that he had to prematurely take annual leave to perform reserve duty on 6 days in 1996 and 1997 (September 27, 1996, and April 28 to May 2, 1997). His claim seeks compensation for those 6 days.

At the hearing, the following testimony was the sole evidence Mr. Duncan proffered on direct examination in support of his allegations as to events on those 44 days (*i.e.*, whether he was charged military and annual leave):

Q: Were you charged military leave on these dates alleged in the prehearing submission?

A: Yes.

Q: And what type of leave were you forced to take in order to participate in military duty as a result of this mischarged military leave?

A: Annual leave.

[statements by counsel omitted]

Q: Mr. Duncan, were you on active duty on September 27th, 1996?

A: Yes.

Q: Do you recall if you had exhausted your military leave with the Agency by this time?

A: Yes.

Q: What were you forced to do on September 27th, 1996, to fulfill your military obligations?

A: Take annual leave.

Q: And Mr. Duncan, were you on active duty on April 28th, 1997, through May 2nd, 1997?

A: Yes.

Q: And do you recall if you had exhausted your military leave with the Agency by that time?

A: Yes.

Q: And what were you forced to do on April 28th, 1997, to May 2nd, 1997, to fulfill your military obligation?

A: Take annual leave.

Hr'g Tr. 11:1-12:10, Jan. 27, 2010. Mr. Duncan also proffered two documents created by his counsel. Hr'g Tr. 63. First, a standard calendar from an online source showing the months and days for the years 1980 to 1998, on which his counsel made handwritten notations to visually demonstrate the dates about which Mr. Duncan testified. Second, a table created by his counsel again to visually demonstrate the dates about which Mr. Duncan testified. Mr. Duncan also proffered his military records, which do not show whether military or annual leave was charged but instead show the days Mr. Duncan performed reserve duty.

Mr. Duncan did not provide his civilian records (also called time and attendance records, leave and earning statements, or leave slips), which would identify any dates the Air Force charged him military or annual leave. Hr'g Tr. 40:3-8; 64:3-16. Counsel for the Air Force represented that if Mr. Duncan had provided his civilian records and the records showed that he took annual leave as

a result of improperly charged military leave, the Air Force would have compensated him for those days. Hr'g Tr. 38:17-22. In this case, however, it is undisputed that Mr. Duncan's civilian records no longer exist, a fact that the Air Force admitted in a sworn declaration and that the Air Force's counsel conceded at oral argument. *See* Decl. of Jimmy D. Mannon, Resp't's App. 66 ("The agency has no pertinent existing records for appellant."); Oral Arg. 15:02-16:16, Sept. 9, 2011 (agreeing that Mr. Duncan would have been unable to obtain his civilian records from the Air Force or the National Personnel Records Center). Thus, all involved agree that Mr. Duncan could not obtain his civilian records.

The Air Force proffered a witness, Jimmy D. Mannon, Chief of Employee Relations and Civilian Personnel at the same Air Force base where Mr. Duncan worked. Mr. Mannon testified that when a petitioner has provided documents showing he was actually mischarged leave, the Air Force has corrected the petitioner's records and compensated the petitioner for that time. Hr'g Tr. 73:17-20. He explained: "the military leave is actually charged on the civilian side, so you'd have to have the civilian pay records to be able to see that [he was mischarged any military leave]." Hr'g Tr. 84:23-25.

Mr. Mannon highlighted the existence of case-by-case inconsistencies in the Air Force's application of its leave policy. Hr'g Tr. 74: 14-16, 79:9-22. "It was the supervisors that recorded the time in payroll that actually recorded how the time was actually input." Hr'g Tr. 77:24-78:2. In other words, some supervisors improperly charged military leave while others did not: "It just depends on how the employee requested leave and what the supervisor approved and what they put in on the time-cards." Hr'g Tr. 74:14-18. Therefore, "the only way you can tell [whether Mr. Duncan was mischarged military

leave] is if you had the civilian pay records to be able to make the determination then." Hr'g Tr. 84:15-17.

After the hearing, the Administrative Law Judge granted Mr. Duncan's request, finding credible his recollection that "he had to take annual leave to meet his military obligations." *Duncan v. Dep't of Air Force*, No. DA-4324-10-0072-I-1, at *8 (Mar. 4, 2010)). The Air Force filed a petition for review to the Board. The Board granted the petition and reversed the initial decision. The Board held that as a matter of law the initial decision was inconsistent with Board precedent in which:

> the Board has required more than an appellant's personal recollection and reliance on military documents to carry the burden of proof . . . The appellant neither submitted time and attendance records from his civilian employment, nor showed that he attempted to obtain these records from the National Personnel Records Center in St. Louis, Missouri. We find that the appellant has not submitted sufficient evidence to establish that, more likely than not, the agency improperly charged military leave on non-workdays and that he was required to use annual leave to fulfill his military obligations on the dates specified.

*Duncan v. Dep't of Air Force*, 115 M.S.P.R. 275, 278-79 (2010)).

Mr. Duncan appealed. This court has jurisdiction under 28 U.S.C. §1295(a)(9) and 5 U.S.C. § 7703.

## II.

This court's review of the Board's decision is limited and governed by 5 U.S.C. § 7703(c). This court affirms unless the Board's decision is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.

## III.

To obtain compensation for a *Butterbaugh* claim, the petitioner must show that he performed reserve duty on non-workdays, that the agency charged him military leave on those days, and that he exhausted his military leave and was charged other leave to fulfill his reserve obligation.  *See Pucilowski v. Dep't of Justice*, 498 F.3d 1341, 1344-45 (Fed. Cir. 2007).  The petitioner bears the burden of proof by a preponderance of evidence.  *See Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001); *Cobb v. Dep't of Defense*, 106 M.S.P.R. 390, 393 (2007); *O'Bleness v. Dep't of Air Force*, 106 M.S.P.R. 457, 461 (2007); *Haskins v. Dep't of Navy*, 106 M.S.P.R. 616, 621 (2007).

Here, the first element is not in dispute.  Mr. Duncan provided military records showing that he performed reserve duty on 38 non-workdays from 1980 to 1998.  The second and third elements (charged military and annual leave) are at issue in this appeal.  Mr. Duncan relied solely upon his own oral testimony and documents created by his counsel's office to prove those elements.  Though the counsel-created calendar and table visually show the dates on which he testified, these were similar to demonstratives summarizing his testimony and not evidence independent of his testimony to prove the underlying facts. *See* Hr'g Tr. 40:3-8; 64:3-16.

The Board has consistently held that civilian records would be sufficient evidence to satisfy the military and annual leave elements.  *See, e.g.*, *Davenport v. Dep't of Justice*, 104 M.S.P.R. 580, 586 (2007); *Cobb v. Dep't of Defense*, 106 M.S.P.R. 390 (2007); *O'Bleness v. Dep't of Air*

*Force*, 106 M.S.P.R. 457, 461-62 (2007); *Haskins v. Dep't of Navy*, 106 M.S.P.R. 616, 622-23 (2007). In this case, the parties agree that those records do not exist, so this court must consider whether, absent such records, the Board erred in finding that Mr. Duncan did not establish his claim.

Here, the Board believed that Mr. Duncan was merely speculating about having to use annual leave based on his review of his military records, such that his recollection was not independent. The Board found that, "it is apparent that these dates are based upon speculation arising from his review of the DFAS records showing his dates of military service and his understanding that the agency would have charged him military leave on non-workdays." *Duncan v. Dep't of Air Force*, 115 M.S.P.R. 275, 278-79 (2010)). Accordingly, the Board held that something more was required to substantiate Mr. Duncan's claim.

In this case, however, Mr. Duncan did not supply any evidence other than his testimony. He has not provided, for example, any other contemporaneous documents, physical evidence, or witness testimony to corroborate his testimony. The record does not show that all corroborating evidence was unavailable.

Furthermore, the record reflects and the Board acknowledged that supervisors, not petitioners, charge military and annual leave. Even after an employee makes a request for military or annual leave, the supervisor must authorize and take additional, necessary steps to charge military or annual leave. Oral Arg. 28:31-29:05, Sept. 9, 2011. Thus, a petitioner may not be in the best place to know of the procedures adopted and followed by his employer. Therefore, on the facts of this case, this court cannot say that it was erroneous for the Board to find that Mr. Duncan's testimony was not based on his

independent recollection and was not supported otherwise by evidence in the record. Given these findings, the Board did not err in denying Mr. Duncan relief. Accordingly, this court affirms.

In affirming the Board, this court does not create a blanket rule; rather, this court holds that determinations regarding the sufficiency of the evidence must be determined by the Board on a case-by-case basis. This Court would not foreclose, for example, the Board from admitting and relying upon a petitioner's testimony in appropriate circumstances.

In sum, this court recognizes the Board's responsibility and expertise in adjudicating each case on its merits. For instance, in deciding what evidence to consider, the Board did not reach or rely on the Air Force's challenges to the Administrative Judge's credibility determinations. Therefore, that aspect of this case was not before this court on appeal. The Board states:

> The agency raises several claims on review, including but not limited to, challenges to the administrative judge's credibility findings and weighing of the evidence … However, in light of our findings concerning the insufficiency of the appellant's evidence, we need not address these claims.

*Duncan v. Dep't of Air Force*, 115 M.S.P.R. 275, 277 n.2 (2010)). The statutory standards of review give the Board broad leeway to determine the proper adjudicatory methods for these cases, and this case presents no reversible error.

## IV.

Mr. Duncan spends the majority of his brief arguing that the Board erred in granting the Air Force's petition

for review under 5 C.F.R. § 1201.115(d) ("Contents of petition for review"). The court rejects this argument because the Board can consider an initial decision at any time under 5 C.F.R. § 1201.118 ("Board reopening of case and reconsideration of initial decision"), which provides:

> The Board may reopen an appeal and reconsider a decision of a judge on its own motion at any time, regardless of any other provisions of this part.

*See also Connolly v. Dep't of Justice*, 766 F.2d 507, 511 (Fed. Cir. 1985) (discussing the prior regulation at § 1201.117).

For the reasons stated above, this court affirms.

**AFFIRMED.**

COSTS

No costs.