# United States Court of Appeals for the Federal Circuit

---

**TIMOTHY J. TIERNEY**,
*Petitioner,*

**v.**

**DEPARTMENT OF JUSTICE**,
*Respondent.*

---

2011-3159

---

Petition for review of the Merit Systems Protection Board in No. DA3443060659-I-2.

---

Decided: June 20, 2013

---

DAVID A. FALLON, Tully Rinckey P.L.L.C, of Albany, New York, argued for petitioner. On the brief was STEVEN L. HERRICK, of Washington, DC.

MICHAEL P. GOODMAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRIAN M. SIMKIN, Assistant Director.

---

Before MOORE, BRYSON, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* MOORE.
Dissenting opinion filed by *Circuit Judge* BRYSON.

MOORE, *Circuit Judge*.

Timothy J. Tierney appeals from the final decision by the Merit Systems Protection Board (Board) denying his request for corrective action with respect to days for which Mr. Tierney alleged that he was improperly charged annual leave or leave without pay while performing reserve military duties. Because the Board's decision is not supported by substantial evidence, we *reverse* and *remand*.

## BACKGROUND

Under 5 U.S.C. § 6323(a)(1), federal employees who are members of the National Guard are entitled to take up to fifteen days of annual military leave "without loss in pay, time, or performance or efficiency rating." Until § 6323 was amended in 2000, the Office of Personnel Management (OPM) interpreted this section as providing fifteen calendar days of leave each year, rather than fifteen workdays. *Butterbaugh v. Dep't of Justice*, 336 F.3d 1332, 1333–34 (Fed. Cir. 2003). As a result, federal employees who attended reserve training on days when they were not required to work would nonetheless be charged military leave. In *Butterbaugh*, we held that even before 2000, federal agencies were not entitled to charge employees military leave on non-workdays (*e.g.*, weekends). *Id.* at 1343.

Between 1974 and 2001, Mr. Tierney worked at the Drug Enforcement Agency (the Agency). During this time, he was also a member of the U.S. Air National Guard Reserve. Mr. Tierney filed a *Butterbaugh* claim with the Board, arguing that the Agency charged him military leave for performance of his military reserve duty on forty-four non-workdays, in violation of the Uniformed

Services Employment and Reemployment Rights Act of 1994 (USERRA). According to Mr. Tierney, this policy caused him to exhaust his allotted military leave and thereafter required him to take annual leave or leave without pay to perform his military duty.

In an Initial Decision, an Administrative Judge (AJ) held that Mr. Tierney was improperly charged military leave on seventeen of the forty-four disputed non-workdays and, as a result, was forced to take annual leave or leave without pay on those dates. The AJ relied in part on Mr. Tierney's testimony that he knew he was charged military leave on the dates in question because, at the time, it was the Agency's policy to charge military leave for non-workdays falling within a period in which an employee performed reserve duty (so-called "intervening non-workdays"). The AJ noted the fact that Mr. Tierney was a supervisor and thus signed off on leave requests for which military leave was charged for intervening non-workdays. The AJ expressly found credible Mr. Tierney's testimony that he exhausted his military leave nearly every year. The AJ also found credible Mr. Tierney's testimony that he usually took annual leave to perform any remaining reserve duties and recalled taking leave without pay one or two times. Despite the fact that Mr. Tierney did not have any independent recollection regarding the specific dates in question, the AJ found Mr. Tierney's testimony to be credible based on the direct manner in which he testified and his certainty that he was charged military leave on intervening non-workdays.

The AJ also relied on testimony by Michelle Richards, an employee at the law firm representing Mr. Tierney. Ms. Richards testified that she approved the Military Leave Summary introduced as evidence in the case. The Summary reflects periods of active military duty, dates of improperly charged leave, and dates on which annual leave or another form of leave was used for military duty as a result of having been improperly charged military

leave. The AJ noted that Ms. Richards did not base her testimony on any "time and attendance" records or "civilian earnings statements," but rather "assumed" that the Agency followed OPM's policy requiring that military leave be charged on non-workdays. *Tierney v. Dep't of Justice*, No. DA-3443-06-0659-I-2 (Nov. 18, 2010) (Initial Decision).

In response, Ruth Johnston, an Agency representative, testified regarding Mr. Tierney's civilian pay records. She stated that she determined the pay periods into which the disputed dates fell and compared those dates with Mr. Tierney's pay records to determine when he was charged military leave, annual leave, or leave without pay. Ms. Johnston found that Mr. Tierney was not charged annual leave or leave without pay on sixteen of the forty-four disputed dates.

The AJ accepted Ms. Johnston's testimony and agreed that Mr. Tierney should not be compensated for those sixteen days. The AJ found, however, that the pay records showed that Mr. Tierney *was* forced to take annual leave on seventeen of the remaining claimed days. The AJ concluded that Mr. Tierney was entitled to have the Agency correct his time and attendance records to reflect a proper accounting of his military leave. The AJ thus ordered the Agency to compensate Mr. Tierney for the seventeen days on which he was forced to take annual leave in lieu of military leave.

The full Board reversed the AJ's Initial Decision. The Board found that the Military Leave Summary and Mr. Tierney's testimony were based solely on his military records and on the speculation that the Agency improperly charged military leave on intervening non-workdays. The Board also noted that Mr. Tierney admitted that he had no independent recollection of the dates at issue. The Board explained that Mr. Tierney's civilian pay records showed only that he was charged annual leave during

certain pay periods, and thus were insufficient to prove that the Agency charged him military leave on non-workdays or that the annual leave was used on days that he performed reserve duties. The Board also relied on Ms. Johnston's testimony that the pay records show that Mr. Tierney did not use annual leave instead of military leave on sixteen of the days at issue. Mr. Tierney appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must set aside any findings or conclusions of the Board that we determine to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

"To obtain compensation for a *Butterbaugh* claim, the petitioner must show that he performed reserve duty on non-workdays, that the agency charged him military leave on those days, and that he exhausted his military leave and was charged other leave to fulfill his reserve obligation." *Duncan v. Dep't of the Air Force*, 674 F.3d 1359, 1363 (Fed. Cir. 2012). The petitioner bears the burden of proof by a preponderance of evidence. *Id.*

Mr. Tierney argues that he introduced preponderant evidence to support his claim. He relies in part on his civilian pay records, which show that he was paid for annual leave during certain pay periods in which he claimed he was forced to use annual leave to perform his reserve duty. Mr. Tierney seems to concede that the records show he was not charged annual leave on *some* of the dates he contested, but argues that the same records corroborate his claim that he was forced to use annual leave to perform his reserve duty on the other dates at issue. Mr. Tierney also points to his own testimony before the AJ that the Agency's policy was to charge employees military leave on non-workdays. He argues that, as a

supervisor at the Agency, he was responsible for charging military leave and thus was familiar with the Agency's policy at the time.

The government counters that Mr. Tierney failed to prove that the Agency charged him military leave on non-workdays. According to the government, Mr. Tierney's civilian pay records show what he was paid, but not whether he was charged military leave on non-workdays because civilian pay records do not show which day in the two-week pay period Mr. Tierney was charged leave. The government argues that Mr. Tierney only alleged that he was incorrectly charged military leave for one non-workday that did not fall on a weekend, and points out that the Agency showed Mr. Tierney was charged holiday leave rather than military leave for that day. The government also argues that Mr. Tierney's civilian pay records do not support his claim, but rather show that it was based on incorrect assumptions. Specifically, the government argues that Mr. Tierney's civilian pay records show that he was not charged leave for sixteen of the days for which he claimed he was forced to use annual leave and that the records are otherwise at best inconclusive. The government contends that this evidence shows that Mr. Tierney was mistaken in his assumption that the Agency always followed a policy of charging military leave for intervening non-workdays.

The government argues that Mr. Tierney's status as a supervisor does not change the outcome. According to the government, had Mr. Tierney been correct in his testimony about the Agency's policy for charging leave, the Agency would not have been able to disprove his assertions regarding sixteen of the days at issue.

The government contends that Mr. Tierney's case is nearly identical to *Duncan*, a recent case in which we affirmed a Board decision rejecting a petitioner's *Butterbaugh* claim. The government's arguments, however,

ignore critical differences between Mr. Tierney's case and the facts of *Duncan*. In *Duncan*, we concluded that the Board did not err because the only pieces of probative evidence were the petitioner's reserve service records and his own recollection of being charged annual leave to perform his reserve duties on the dates in question. 674 F.3d at 1361–62. We noted that the petitioner failed to introduce contemporaneous documents such as pay records, or the testimony of a supervisor concerning the agency's policy regarding charging leave. *Id.* at 1364. We explained that, because the petitioner was not a supervisor, he may not have been "in the best place to know of the procedures adopted and followed by his employer." *Id.*

The Board's decision in the present appeal pre-dates our *Duncan* opinion, and the Board thus lacked the guidance we provided in that case. The Board performed virtually no analysis of the elements required to prove a *Butterbaugh* claim and did not address the evidence we highlighted as important in *Duncan*. In a one-and-a-half page opinion, the Board overturned the AJ's decision based entirely on the conclusion that Mr. Tierney's civilian pay records were insufficient to prove his claim. The Board's opinion did not discuss the state of the factual record, including key credibility determinations by the AJ.

As an initial matter, the Board did not acknowledge that OPM had a stated policy of charging military leave for intervening non-workdays. *Butterbaugh*, 336 F.3d at 1333. As the dissent in *Butterbaugh* describes in detail, the government has consistently interpreted the military leave statute in this way as far back as 1917. *Id.* at 1344–51 (Bryson, J., dissenting).

And unlike *Duncan*, here Mr. Tierney testified that he was a supervisor who followed that policy and charged leave for non-workdays. Mr. Tierney specifically recalled signing off on other employees' leave requests in which

military leave was charged for intervening non-workdays. Unlike the petitioner in *Duncan*, Mr. Tierney thus *was* "in the best place to know of the procedures adopted and followed by his employer." 674 F.3d at 1364.

The Board also failed to articulate any basis for overturning the AJ's express credibility determinations. The AJ found that Mr. Tierney "gave credible testimony that, during the time in question, he was charged military leave for intervening non-workdays and that this caused him to prematurely exhaust his military leave and be forced to use annual leave and leave without pay to perform military obligations." Initial Decision at 6. The AJ also relied on Mr. Tierney's testimony that he exhausted his military leave almost every year and remembered taking annual leave and leave without pay to fulfill any remaining reserve duties. The AJ explained that Mr. Tierney was credible because he "testified in a direct manner and was sure that he was charged military leave on intervening non-workdays." *Id.* The Board is generally free to substitute its judgment for that of the AJ, but it is not "free to overturn an administrative judge's demeanor based credibility findings merely because it disagrees with those findings." *Leatherbury v. Dep't of Army*, 524 F.3d 1293, 1304 (Fed. Cir. 2008).

In addition, in this case Mr. Tierney introduced his civilian pay records. Again in *Duncan*, we noted that civilian pay records were exactly the sort of evidence necessary to substantiate a *Butterbaugh* claim. 674 F.3d at 1362–63. Mr. Tierney's records do not identify precisely the dates on which he was charged annual leave or leave without pay. They do show, however, that for seventeen of the days on which Mr. Tierney claims he used annual leave to perform reserve duties, he *was* charged annual leave during the corresponding pay period.

The government makes much of the fact that it was able to establish through Mr. Tierney's civilian pay records that, for sixteen of the disputed days, Mr. Tierney was not charged any annual leave during the relevant pay period. Although the government is correct that this evidence shows that the Agency did not *always* follow its leave policy correctly, it does not establish that the Agency *never* did.

The government concedes that Mr. Tierney was a supervisor who testified as to his knowledge that the Agency followed OPM's policy of charging military leave on intervening non-workdays. The AJ expressly credited Mr. Tierney's testimony that he remembered being charged military leave on non-workdays and using annual leave or leave without pay to perform reserve duties after exhausting his military leave. Mr. Tierney also introduced civilian pay records that show that for seventeen of the claimed days, he was in fact charged annual leave during the relevant pay period. This evidence is sufficient. The Board lacked substantial evidence to reach a contrary conclusion.

CONCLUSION

We have considered the government's arguments on appeal and find them to be without merit. Because the Board arbitrarily overruled the AJ's credibility determinations and ignored several pieces of relevant evidence that support Mr. Tierney's claim, we reverse its decision denying Mr. Tierney's request for corrective action. We remand for the Agency to correct Mr. Tierney's time and attendance records and to compensate him for the seventeen days for which the AJ found that Mr. Tierney was forced to take annual leave or leave without pay to fulfill his reserve duties.

**REVERSED AND REMANDED**

# United States Court of Appeals for the Federal Circuit

---

**TIMOTHY J. TIERNEY**,
*Petitioner,*

**v.**

**DEPARTMENT OF JUSTICE**,
*Respondent.*

---

2011-3159

---

BRYSON, *Circuit Judge,* dissenting.

This case turns on the burden of proof. Mr. Tierney bore the burden of proving that his agency charged him with military leave on certain non-working days. *See Duncan v. Dep't of the Air Force*, 674 F.3d 1359, 1363 (Fed. Cir. 2012).

In an effort to satisfy that burden, Mr. Tierney introduced evidence that during the period at issue the government had a policy of charging military leave not only for the workdays during which employees were performing military service, but also for intervening non-workdays falling within those periods of military service. He testified that as a supervisor he was aware that it was the policy of his agency to charge military leave for such intervening non-workdays.

On the assumption that his agency was charging military leave for non-workdays falling within a period of military leave, Mr. Tierney identified 43 intervening non-

workdays during the 18 years in dispute (42 weekend days and one holiday) for which he claims the agency's policy would have required it to charge him with military leave. He then identified 41 days between 1980 and 1997 in which he performed military service after his military leave would have been exhausted if the agency had charged the 43 intervening non-workdays against his allotted military leave. Based on his assumption that his military leave was improperly used for non-working days, he argued that he must have been charged annual leave or leave without pay for the 41 days on which he performed military service but was not credited with military leave, and that he should be compensated for them.

It is now clear that there was a flaw in Mr. Tierney's theory. Personnel records introduced by the government showed that 16 of the days for which Mr. Tierney claimed he was forced to use annual leave or leave without pay fell within pay periods in which Mr. Tierney was not charged any annual leave or leave without pay. That evidence conclusively rebutted his case with respect to those particular days. More importantly, it showed that the underlying theory of Mr. Tierney's case—that the agency consistently charged employees with military leave for intervening non-workdays—was wrong.

Notwithstanding the effect of the government's evidence in undercutting Mr. Tierney's theory of the case, the administrative judge granted relief to Mr. Tierney for 17 days in which the personnel records left open the possibility that he may have been improperly charged military leave for intervening non-workdays earlier in the same year. Those 17 days fell into pay periods during which Mr. Tierney was charged annual leave, although the records did not identify the particular days during the pay period for which the annual leave was charged, nor did they reflect whether he might have elected to use annual leave in place of military leave on particular occasions. Thus, while the records for those 17 days did

not prove that Mr. Tierney was not charged annual leave for days on which he was performing military service and would have wanted to use military leave rather than annual leave, they also did not prove the contrary. The fact that on 17 occasions in an 18-year period Mr. Tierney was charged with some annual leave during a pay period in which he was performing some military service does not prove that he was charged annual leave for the days on which he was performing military service and that he was forbidden from using military leave in those instances. There are at least two other, plausible explanations: He may have taken some annual leave on those occasions in conjunction with his authorized military leave, or he may have chosen to use annual leave rather than military leave for particular days that he was on active duty.[1]

The administrative judge recognized that the military and personnel records did not prove that Mr. Tierney had been forced to use annual leave even for those 17 days. Nonetheless, the administrative judge found Mr. Tierney's testimony regarding the agency's policy of charging military leave for intervening non-workdays to be credible, and on that basis ruled in Mr. Tierney's favor with respect to the 17 days.

The full Board reversed the administrative judge's decision based on two observations, neither of which is

---

[1] Military leave can be carried over from one fiscal year to the next up to a maximum of 15 days of carryover leave. 5 U.S.C. § 6323(a). While annual leave can also be carried over up to a certain limit, *id.* § 6304(a), it can be to the benefit of an employee with a large balance of annual leave to use annual leave rather than military leave for a period of military service in order to avoid losing the annual leave, *see* 5 C.F.R. § 353.208, and to carry over the corresponding days of military leave to the next fiscal year.

contested here.   First, the Board pointed out that the
military and civilian records in the case were "insufficient
to demonstrate that the agency improperly charged him
military leave on non-workdays or that, as a result, he
was forced to use annual leave to cover his absence for
military service."  Second, as to the appellant's contention
that the agency consistently followed the policy of charg-
ing military leave for intervening days, the Board recog-
nized that the government's evidence disproving Mr.
Tierney's claims as to 16 of the days in dispute "casts
doubt on several of the presumptions underlying the
information presented by [Mr. Tierney]."

The majority rests its decision largely on the adminis-
trative judge's finding that Mr. Tierney was a credible
witness when he testified that "he was sure that he was
charged military leave on intervening non-workdays."
The problem is that Mr. Tierney's testimony about the
agency's consistent practice was proved to be wrong.  The
records disproved his claim of improper charging of mili-
tary leave with respect to 16 of the days for which he
sought relief, and as to the 17 days as to which he was
granted relief, the best that can be said is that the records
did not conclusively prove him wrong.

While it is true that the Board should not disregard a
credibility finding made by an administrative judge
without explanation, there was such an explanation in
this case:  The records showed that Mr. Tierney's testimo-
ny regarding the agency's consistent practice of charging
military leave for intervening non-workdays was not true.
The majority recognizes this problem with the evidence; it
acknowledges that the government is correct that the
evidence showed that the agency did not always follow its
policy regarding military leave, but it adds that the
government's evidence does not prove that the agency
never followed that policy.

If the burden of proof in this case were on the government, that observation might have some force. But it is not. The burden of showing entitlement to compensation for wrongfully charged leave falls on the employee. And in light of the holes in the evidence and the effect of the personnel records in undermining Mr. Tierney's theory of the case, it was reasonable for the Board to conclude that he had not satisfied his burden of proof.

It is important to underscore our role as a reviewing court in a case such as this one. The Board decided that Mr. Tierney did not satisfy his burden of proof. The question before us is not whether, upon an independent examination of the record, we would decide that question as the Board did. Instead, our task is to decide whether it was unreasonable for the Board to reach that conclusion, i.e., whether substantial evidence supports the Board's determination that Mr. Tierney did not sustain his burden of proof. *See Haebe v. Dep't of Justice*, 288 F.3d 1288, 1305 (Fed. Cir. 2002); *Frampton v. Dep't of the Interior*, 880 F.2d 1314, 1317 (Fed. Cir. 1989); *see also Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004) ("What is or is not substantial may only be determined with respect to the burden of proof that the litigant bore in the trial court.").

As the Supreme Court has explained, substantial evidence "must be enough to justify, if the trial were to a jury, a refusal to direct a verdict." *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). What that means is that in order to rule for Mr. Tierney, we must conclude that the evidence in his favor is so strong that if this were a jury trial we would be required to overturn a jury verdict finding that he had not met his burden of proof. *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 366-67 (1998); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). I cannot agree that, on the evidence in this record, we would overturn a jury verdict against Mr. Tierney.

The issue in this case is not one of first impression. In a closely similar case, *Duncan v. Department of the Air Force,* 674 F.3d 1359 (Fed. Cir. 2012), this court upheld the decision of the Board that an employee had not satisfied his burden of proof of showing that his agency had improperly charged military leave for intervening non-workdays. We upheld the Board in *Duncan* even though, as in this case, the administrative judge credited the petitioner's testimony regarding his leave. *Id.* at 1362.

There are only two distinctions between this case and *Duncan.* The first one cuts in Mr. Tierney's favor: Unlike Mr. Duncan, Mr. Tierney was a supervisor and therefore could be assumed to have greater familiarity with the agency's leave policies and practices. The second distinction, however, cuts against Mr. Tierney: In Mr. Tierney's case, unlike in Mr. Duncan's case, there was documentary evidence that specifically rebutted the employee's argument that the agency applied a consistent policy of charging military leave for intervening non-workdays. Thus, while Mr. Tierney's status as a supervisor might have justified an inference that he was aware of the agency's policies and practices with respect to charging military leave, the fact that the documentary evidence showed that his testimony regarding the agency's practice was incorrect with respect to a number of the days for which he sought compensation substantially undermines the probative force of that inference.[2] This case is thus not mean-

---

[2] As noted above, while the documentary evidence showed that Mr. Tierney took some days of annual leave during some of the pay periods in which he also served some days on active duty, that evidence did not establish that the days of annual leave were the days on which he was on active duty and that he had already exhausted his military leave on each of those occasions. On balance, then, the documentary evidence is more helpful to the government than to Mr. Tierney.

ingfully distinguishable from the court's precedent in *Duncan*. In the absence of a persuasive ground for distinguishing that precedent, we are obliged to follow it.

I respectfully dissent.