# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| LUIS MARTINEZ, | DOCKET NUMBER |
| Appellant, | AT-114M-23-0129-Y-1 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: November 21, 2025 |
| Agency. | |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Luis Martinez, Dunnellon, Florida, pro se.

Eileen Dizon Calaguas, Esquire, San Francisco, California, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained his removal. For the reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision. The appellant's removal is NOT SUSTAINED.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

The appellant was employed as a Transportation Security Officer (TSO) at the Jacksonville International Airport.[2]  Initial Appeal File (IAF), Tab 16 at 13. On March 23, 2022, a passenger returned to the security checkpoint lane and informed two Supervisory TSOs (STSOs) that he had lost a single AirPod,[3] and that his cell phone was "pinging" at the checkpoint, indicating that the AirPod was in the area.  IAF, Tab 5 at 34.  The two STSOs searched the area, looking for the AirPod, until the passenger informed them that his phone was no longer indicating that his AirPod was in the security area.  *Id.*  Subsequently, the two STSOs and the agency's Transportation Security Manager (TSM) reviewed Closed Circuit Television (CCTV) footage, identified the appellant as the individual who had collected the bin with the passenger's AirPod, and reported to Transportation Security Administration Investigations (TSA-Investigations) that they suspected the appellant stole the AirPod from the bin.  *Id.* at 34-35.

TSA-Investigations conducted an internal investigation into the allegation, which included a review of the CCTV footage, as well as interviews with the STSOs, the TSM, and the appellant.  *Id.* at 32-72.  In a written statement, the TSM stated that she believed the appellant may have taken the passenger's AirPod based on her conversations with the STSOs, as well as the appellant's "suspicious actions" in the CCTV footage, specifically, that he tipped the bin in question into his left hand, removed his latex gloves and placed them in his left pocket, and then transferred those gloves to his right pocket, and the fact that the passenger indicated that his phone stopped pinging at the same time the appellant left the checkpoint to go on break.  *Id.* at 45, 49.  Later, during her interview with TSA-Investigations, the TSM stated that the appellant did not deny taking the

---

[2]  The Board has jurisdiction over this removal pursuant to its memorandum of agreement with the Transportation Security Administration, which became effective on September 26, 2019.  Initial Appeal File, Tab 6 at 13-17.

[3]  AirPods are wireless headphones.

AirPod when she questioned him, claiming instead that he did not remember seeing or removing an AirPod from a bin, which she found to be suspicious. *Id.* at 45-46. The TSM, however, admitted that she did not recall asking the appellant if the AirPod was inside his glove because "she did not think it was there at the time." *Id.* at 46.

The STSOs submitted similar written statements, stating that they suspected the appellant may have taken the AirPod based on their review of the CCTV footage and the appellant's "suspicious actions," likewise specifying that the appellant tipped the bin towards his left hand, removed his gloves, and put them in his left pocket before then transferring them to his right pocket, and that the passenger indicated his phone stopped pinging once the appellant was no longer in the checkpoint area. *Id.* at 55-56, 59, 62. During their interviews with TSA-Investigations, both STSOs conceded that although they believed that the appellant's actions were suspicious, "the CCTV footage lacked 'the smoking gun' evidence" that the appellant took the AirPod. *Id.* at 56.

When interviewed by TSA-Investigations, the appellant denied taking the AirPod and offered explanations for his behavior. *Id.* at 69. For instance, the appellant explained that he tipped the bin in question because he had to walk through several coworkers to reach the prescreening portion of the lane, and tilting the bin made it easier to pass through the area. *Id.* He also explained that he would routinely place used gloves in his pocket when he was busy and dispose of them later. *Id.* TSA-Investigations concluded its investigation and issued a report stating that although some of the appellant's actions "may appear to be suspicious in nature, the video evidence regarding the allegation that he stole the passenger's [AirPod] is not conclusive because the item is very small and is not clearly shown on the recordings." *Id.* at 42-43. The report also concedes that the appellant "is not seen with the [AirPod] in his possession at any time." *Id.* at 35.

Nevertheless, the agency proposed the appellant's removal based on a charge of unauthorized possession, supported by one specification alleging that

the appellant possessed the passenger's single AirPod. IAF, Tab 16 at 14-21. In addition to the actions identified by the TSM and STSOs, the proposing official claimed that the appellant engaged in other suspicious behavior, including grabbing an empty bowl with only the thumb and index finger of his left hand, and picking up two additional bowls with his left hand "still clenched." *Id.* at 15. The proposing official additionally asserted that the appellant carried an empty bin to the prescreening area, instead of placing the bin in the empty bin cart next to him, for "no other purpose than to provide the perception for CCTV that [the appellant] could not be concealing the AirPod since [he] was using [his] left hand." *Id.* The appellant responded to the proposed removal, denying that he took the passenger's AirPod and explaining that he was merely performing his job duties. *Id.* at 22-28. However, the deciding official sustained the charge of unauthorized possession and removed the appellant effective December 1, 2022. IAF, Tab 4 at 16-30.

The appellant filed an appeal with the Board challenging his removal, and after holding a hearing, the administrative judge issued an initial decision affirming the agency's removal action. IAF, Tab 22, Initial Decision (ID). Analyzing the CCTV footage, the administrative judge concluded that the passenger's AirPod was most likely in the bin when the appellant picked it up and that the appellant tipped the bin in order to grab the AirPod in his left hand. ID at 8. He also found that the manner in which the appellant held other bins, i.e., with his left hand clenched, and the "unnatural" manner in which the appellant removed his gloves, specifically, pulling his gloves over a clenched fist, established that the appellant most likely concealed the AirPod in his left fist. ID at 9. The administrative judge additionally found that, most likely, the appellant placed his gloves in his pocket because they contained the AirPod, and that once the appellant realized the passenger was tracking the single AirPod to the security checkpoint, he went on break and disposed of the evidence. ID at 9-10. Also, according to the administrative judge, the appellant's behavior, such as glancing

at a coworker as he changed his gloves and looking at the passenger as he went on break, was indicative of someone who had just engaged in misconduct and was attempting to determine if he was being surveilled. *Id.* Therefore, the administrative judge sustained the agency's charge, and after finding that the agency proved nexus and the reasonableness of the penalty, he affirmed the agency's removal action. ID at 10-12.

The appellant has filed a petition for review, arguing that he never possessed the passenger's AirPod and asserting that the administrative judge did not properly consider the evidence in sustaining the charge. Petition for Review (PFR) File, Tab 1 at 1-10. The agency has filed a response in opposition to the appellant's petition for review. PFR File, Tab 5.

## DISCUSSION OF ARGUMENTS ON REVIEW

Generally, in an adverse action appeal, an agency must prove its charge by a preponderance of the evidence, establish a nexus between the action and the efficiency of the service, and establish that the penalty it imposed is within the tolerable bounds of reasonableness. *Hall v. Department of Defense*, 117 M.S.P.R. 687, ¶ 6 (2012). An agency must prove all of the elements of the substantive offense it charged against the appellant and a failure to do so will cause the Board to not sustain the charge. *King v. Nazelrod*, 43 F.3d 663, 666 (Fed. Cir. 1994). Furthermore, the Board adjudicates an agency's charge as it is described in the agency's proposal and decision notices. *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 14 (2001); *Rackers v. Department of Justice*, 79 M.S.P.R. 262, 276 (1998), *aff'd*, 194 F.3d 1336 (Fed. Cir. 1999) (Table). In other words, the Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency; the Board may not substitute what it considers to be a more adequate or proper basis. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 7 (2016).

To prove its charge of unauthorized possession, the agency must first establish that the appellant possessed the passenger's AirPod. IAF, Tab 4 at 18-30. When, as here, an administrative judge's findings are not based on the observation of witnesses' demeanor, the Board is free to reweigh evidence and substitute its own judgment on credibility issues. *Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 8. After reviewing the CCTV footage upon which the agency's case and the administrative judge's findings rest, we find that the agency has not established its charge of unauthorized possession. Namely, the agency has asserted that the appellant's behavior in the CCTV footage proves by preponderant evidence that the appellant possessed the AirPod in his gloved left hand. IAF, Tab 4 at 18-20. However, the footage shows that, after the appellant deposited the bin supposedly containing the AirPod in the prescreening area of the checkpoint lane, he grabbed a bowl, walked back toward the post-screening area with the bowl in his gloved left hand, and clearly opened his gloved left hand as he placed the bowl by the screener. IAF, Tab 10-2 at 00:20-00:49. If the agency's theory was correct, and the appellant had the AirPod concealed in his gloved left hand, the AirPod would have fallen out of his hand at this moment. There is, however, no evidence that an item fell from either of the appellant's hands, both of which were open and relaxed at this point. *Id.* at 00:49. Accordingly, the agency's evidence actually proves that the appellant did not commit the misconduct as alleged. *Id.*

Even if the video did not have footage of the appellant with open hands, the agency's charge of unauthorized possession would still not withstand our review. The only evidence that the agency put forth in support of its charge was speculative statements by its officials regarding the appellant's allegedly suspicious behavior in the CCTV footage. The appellant was not charged with acting suspiciously, and absent corroborating evidence, the agency's speculation as to the reasons behind the appellant's behavior is not sufficient to establish a charge of unauthorized possession by preponderant evidence. *See Duncan v.*

*Department of the Air Force*, 115 M.S.P.R. 275, ¶ 9 (2010) (stating that speculation does not rise to the level of preponderant evidence), *aff'd*, 674 F.3d 1359 (Fed. Cir. 2012). Furthermore, we discern nothing overtly suspicious about the appellant's behavior and find his explanation of his actions to be consistent with the video evidence, i.e., tipping the bin to move through a crowded area, removing the gloves and pocketing them absent-mindedly, taking a break per the agency's instructions. IAF, Tab 5 at 69, Tab 10-2, Tab 16 at 22-28. Accordingly, we find that the agency did not prove its charge of unauthorized possession by preponderant evidence.

On review, the appellant also states that, upon further examination of the video evidence, he noticed that the camera had captured the AirPod being inadvertently knocked to the floor by another employee opening a box under the conveyor belt. PFR File, Tab 1 at 2, 11; IAF, Tab 10-6 at 4:30. We have reviewed this footage as well, and although we cannot tell definitively what that small, white object is, it has every appearance of being the missing AirPod. Furthermore, this small, white object appears exactly when and where one would expect it to appear if, as the appellant postulated all along, it was swept out of the bin by the curtain and fell through the rollers. IAF, Tab 4 at 22. In any event, even if this segment of the footage is not definitive, we find that it more probably than not shows what really happened to the missing AirPod and that it casts even further doubt on the agency's already insufficient case.

Because the agency did not prove its charge, the removal cannot be sustained.

## ORDER

We ORDER the agency to cancel the removal action and restore the appellant to his TSO position effective December 1, 2022. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[4]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[5]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.
2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.