# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

VICKIE L HARTLESS,

      Appellant,

      v.

DEPARTMENT OF HOMELAND
    SECURITY,

      Agency.

DOCKET NUMBER
DC-1221-22-0613-W-1

DATE: February 26, 2025


# THIS FINAL ORDER IS NONPRECEDENTIAL[1]


Gary M Gilbert, Esquire, Renn Fowler, Esquire, and David Karman, Esquire, Silver Spring, Maryland, for the appellant.

Kelleen O'Fallon, Esquire, Philadelphia, Pennsylvania, for the agency.

Thomas Ziehnert, Esquire, and Bridget E. Feeney, Esquire, Springfield, Virginia, for the agency.


## BEFORE

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman*
Raymond A. Limon, Member


*Vice Chairman Kerner recused himself and
did not participate in the adjudication of this appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

# FINAL ORDER

The appellant has filed a petition for review and the agency has filed a cross petition for review of the initial decision, which granted in part the appellant's request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as these only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review. Therefore, we DENY the petition for review and the cross petition for review. Except as expressly MODIFIED to supplement the administrative judge's explanation of the appropriate corrective action required of the agency, we AFFIRM the initial decision.

# DISCUSSION OF ARGUMENTS ON REVIEW

<u>We affirm the administrative judge's contributing factor analysis.</u>

To prevail on the merits of an IRA appeal, an appellant must meet her initial burden of proving by preponderant evidence[2] that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity

---

[2] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).[3] *Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 8.

The appellant "may demonstrate that the disclosure or protected activity was a contributing factor in the personnel action through circumstantial evidence, such as evidence that—(A) the official taking the personnel action knew of the disclosure or protected activity; and (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1)(A), (B); *Karnes*, 2023 MSPB 12, ¶ 8. Alternatively, an employee can demonstrate that a disclosure was a contributing factor in a personnel action through other circumstantial evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012).

In the initial decision, the administrative judge made credibility determinations and concluded that the appellant did not prove by preponderant evidence that her whistleblowing disclosures and/or protected activity were a

---

[3] The administrative judge made the following findings in the initial decision: (1) the appellant's March 2018 disclosure to Congressional committee staff constituted a reasonable belief of a violation of law, rule, or regulation and an abuse of authority; (2) her April 2018 communications to the head of the Investigations Office and the OPR Director expressing her opposition to the decision not to investigate complaints of favoritism and discrimination against the acting OPR director constituted a reasonable belief of a violation of management directives; (3) her April 26, 2018 OIG complaint about the information described in the second whistleblowing disclosure constituted activity protected by 5 U.S.C. § 2302(b)(9)(C); and (4) the agency's decision to eliminate her OPR Mission Support Director position during the realignment and the directed reassignment to a nonsupervisory position constituted personnel actions pursuant to 5 U.S.C. § 2302(a)(2). Initial Appeal File, Tab 72 at 25, 29-40. Neither party challenges these findings on review, and we affirm them herein.

contributing factor in the elimination of her Mission Support Director position during the realignment because none of the decisionmakers had actual or constructive knowledge of her whistleblowing disclosures and protected activity and no one with such knowledge influenced any of the decisionmakers. Initial Appeal File (IAF), Tab 72, Initial Decision (ID) at 41-48. The administrative judge also considered the alternative method of proving contributing factor. ID at 48. He noted, among other things, that the realignment process began before the appellant made any whistleblowing disclosures or engaged in protected activity, the timing of the realignment and the inclusion of the Mission Support Director position in the realignment were not suspicious, and the position was identified early in the realignment process by a working group that did not include anyone with an apparent motive to retaliate or have any basis to know about the appellant's whistleblowing disclosures or protected activity. *Id*.

Regarding the directed reassignment, the administrative judge found that none of the decisionmakers had knowledge of her whistleblowing disclosures or OIG complaint at that time. ID at 44, 49-51. He found, however, that the appellant proved that her April 2018 whistleblowing disclosure was a contributing factor in the directed reassignment[4] because the OPR Director, a recipient of that disclosure, made negative comments about the appellant to the Deputy Executive Assistant Administrator (DEAA) in February 2019, which influenced the DEAA not to return the appellant to OPR thereafter. ID at 50-51 (citing *Karnes*, 2023 MSPB 12, ¶¶ 19, 22). Importantly, the administrative judge noted that the influence in question occurred less than a year after the whistleblowing disclosure and the decision-making about where to place the

---

[4] The administrative judge took a broad view of the directed reassignment personnel action. In pertinent part, the administrative judge explained that the "issue in this personnel action is the decision of where to put the appellant . . . after the realignment," which encompassed the agency's decision to move her to Training and Development in or around September 2019 and not to place her in the OPR Senior Advisor detail during the summer of 2019. ID at 49, 52. Neither party challenges the administrative judge's broad view of the directed reassignment personnel action.

appellant occurred in the months thereafter.  ID at 51.  Both parties challenged the administrative judge's contributing factor analysis, but we are not persuaded by their assertions on review.

For example, the appellant contends that agency witnesses lied about not having knowledge of her disclosures because, among other things, she "told counsel and others [that] she was contacting" Congressional committee staff, and there was "high-profile, well-publicized turmoil between the agency and Congress."  Petition for Review (PFR) File, Tab 4 at 7-10.  She also asserts that it was "absurd," "nonsensical," and "unexplainable" that the agency decided not to return her, a "top rated, experienced employee," to OPR, even though the job duties remained, there was a need for an experienced official to perform those duties, and the agency detailed other employees to fulfill those duties.  *Id.* at 9-10.

Notably, the appellant does not identify by name or title any individual whom she told of her disclosure to Congressional committee staff who was a decisionmaker in either of the personnel actions or who influenced the decisionmakers.  Moreover, her generic assertion that "all agency witnesses feign[ed] no knowledge" of her disclosures, PFR File, Tab 4 at 10, is speculative, and an allegation based on speculation does not rise to the level of preponderant evidence, *Duncan v. Department of the Air Force*, 115 M.S.P.R. 275, ¶ 9 (2010), *aff'd*, 674 F.3d 1359 (Fed. Cir. 2012).  Finally, her contention that the agency's staffing decisions were "absurd," "nonsensical," and "unexplainable" does not, standing alone, satisfy the alternate method for proving contributing factor.

In its cross petition for review, the agency asserts that the administrative judge erred when he found that the appellant proved that her April 2018 whistleblowing disclosure was a contributing factor in the directed reassignment because the DEAA's failure to consider her for a detail to the Senior Advisor position during the summer of 2019 was not affected by "isolated comments" from the OPR Director 5 months earlier.  PFR File, Tab 8 at 4, 20-24.  The

agency also asserts that the administrative judge's reliance on *Karnes*—in which the Board found a direct relationship between a retaliatory recommendation and a subsequent reassignment—was misplaced because there was no relationship between the OPR Director's "negative comments" about the appellant in February 2019 and the DEAA's decision in July 2019 to assign the appellant to the Transportation Security Administration (TSA) Human Resources (HR) Academy. *Id*. at 22-23.

The U.S. Supreme Court has adopted the term "cat's paw" to describe a case in which a particular management official, acting because of an improper animus, influences another agency official who is unaware of the improper animus when implementing a personnel action. *Karnes*, 2023 MSPB 12, ¶ 19 (discussing *Staub v. Proctor Hospital*, 562 U.S. 411 (2011)). Under the cat's paw theory, an appellant can establish that a prohibited animus toward a whistleblower was a contributing factor in a personnel action by showing by preponderant evidence that an individual with knowledge of the whistleblowing disclosure influenced the officials who are accused of taking the personnel actions. *Id*.

We have considered the OPR Director's negative comments about the appellant,[5] the context in which he made those comments, the administrative judge's discussion of this evidence, and the agency's assertion that there was no relationship between the OPR Director's negative comments about the appellant and subsequent staffing decisions. IAF, Tab 38 at 52-53; ID at 14, 50-51; PFR File, Tab 8 at 22-23. Although the DEAA testified that he understood that the OPR Director's comments were "about keep[ing] a resource," and the

---

[5] The OPR Director's negative comments about the appellant were contained in a February 6, 2019 email chain, in which he was advocating to keep employee A.B. in OPR. IAF, Tab 38 at 52. In pertinent part, the OPR Director stated, "[i]n addition to her competence, [A.B.] has been very beneficial for [O]PR culture, *particularly in the wake of [the appellant]*." *Id*. (emphasis added). The OPR Director also stated that A.B. was a "high performing asset who would be valuable to the overall organization. When she does go to the [business management office], *I'd only ask that she'd be placed well outside of [the appellant's] orbit. I feel strongly that we owe this to [A.B.]*" *Id*.

administrative judge generally found the DEAA credible,[6] the administrative judge also found that the OPR Director's negative comments about the appellant "would have made it clear to [the DEAA] that he did not want the appellant to return to OPR." ID at 50-51; Hearing Transcript (HT) 3 at 184 (testimony of the DEAA). The Board will not disturb an administrative judge's findings when he considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987). Accordingly, we agree with the administrative judge that, under the cat's paw theory, the knowledge element is satisfied. Moreover, only 18 months passed between the appellant's April 2018 disclosure to the OPR Director and the directed reassignment in October 2019. Thus, the timing element is also satisfied. *See, e.g., Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (stating that the contributing factor element can be shown if the personnel action occurred within 1 to 2 years after the whistleblowing disclosure); *Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 87 (2001) (finding that the appellant's whistleblowing disclosures were a contributing factor in the removal when they were made approximately 21 months and then slightly over a year before the agency removed her). Therefore, we affirm the administrative judge's finding that the appellant has proven contributing factor regarding her April 2018 whistleblowing disclosure and the directed reassignment through the knowledge/timing test.

---

[6] The agency asks the Board to defer to the administrative judge's credibility determinations and find that there were strong reasons for the agency to assign the appellant to the HR Academy independent of her whistleblowing disclosures. PFR File, Tab 8 at 23-24. The agency is conflating contributing factor analysis and the agency's clear and convincing burden. We discuss the strength of the agency's evidence and the administrative judge's credibility determinations in our analysis of the agency's clear and convincing burden, below.

<u>We agree with the administrative judge that the agency failed to prove by clear and convincing evidence that it would have directed the appellant's reassignment absent her April 2018 whistleblowing disclosure.</u>

Even if, as here, the appellant established that she made a whistleblowing disclosure that was a contributing factor in the agency's personnel action, the Board will not order corrective action if the agency can show by clear and convincing evidence[7] that it would have taken the action absent the disclosure. 5 U.S.C. § 1221(e)(2); *Karnes*, 2023 MSPB 12, ¶ 23. In determining whether an agency has met this burden, the Board will consider all of the relevant factors, including the following: (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Karnes*, 2023 MSPB 12, ¶ 24. The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Karnes*, 2023 MSPB 12, ¶ 24. The Board considers all of the evidence presented, including evidence that detracts from the conclusion that the agency met its burden. *Id*.

Regarding the first factor, the administrative judge considered, in pertinent part, the strength of the agency's reasons independent of the OPR Director's influence and the strength of the OPR Director's reasons independent of the appellant's whistleblowing. ID at 53. The administrative judge acknowledged that the directed reassignment was the result of a number of decisions. *Id*. The

---

[7] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than the "preponderance of the evidence" standard. *Karnes*, 2023 MSPB 12, ¶ 23; 5 C.F.R. § 1209.4(e).

administrative judge found that the agency had strong reasons for the realignment, the decision to include the appellant's OPR Mission Support Director position in the realignment, and the decision to reassign the appellant in general terms. ID at 53-54. The administrative judge credited the testimony of the DEAA, and he found that the agency had strong reasons not to place the appellant in the HR Branch Chief position, and instead detail her to Training and Development (T&D) with the plan to have her develop a TSA HR Academy. ID at 53-54; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (stating that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so). The administrative judge also found that the agency had strong reasons for not placing the appellant in the Senior Advisor detail position advertised in February 2019 because, among other things, she was already on a detail to the Department of Homeland Security (DHS) through July 2019, and she did not indicate that she wanted to end her current detail. ID at 55-56.

However, the administrative judge found that the agency did not have strong reasons for its failure to consider the appellant for the Senior Advisor detail during the summer of 2019. ID at 56-57. In pertinent part, the administrative judge found that the OPR Mission Support Director position and the Senior Advisor detail position at this time were "evolutionarily related," meaning that the Senior Advisor detail position was "an evolution of the Mission Support Director position" and involved "many of the same duties."[8] *Id*. The administrative judge noted that, because the appellant needed a position and OPR

_____

[8] Importantly, the administrative judge found that the duties "overlapped in significant parts" because they both processed intakes, managed the database, worked on case management, liaised with other offices, handled requests from Congress, sat on working groups, had two direct reports occupying the same positions, were involved in business management office functions, and advised the Director. ID at 56-57.

needed a Senior Advisor, it would have made sense to consider the appellant for the detail or at least gauge her interest, but neither occurred. ID at 57-58. Here, too, the administrative judge credited the DEAA's testimony, and he found that the DEAA was genuinely trying to find a good fit for the appellant. ID at 58; *Haebe*, 288 F.3d at 1301. However, because the Senior Advisor detail was advertised in February 2019 at the J/K bands, the DEAA's explanation for not considering the appellant during the summer of 2019—looking for a K-band or more senior level employee—was not a strong reason. ID at 58 (citing IAF, Tab 9 at 115). The administrative judge noted that there was no advertisement in the record for the Senior Advisor detail in July 2019, and, in any event, the appellant did not have to apply for any of the positions she moved between in 2019, and she could be placed in positions without applying. ID at 58-59. The administrative judge considered the appellant's qualifications and the qualifications of the person who filled the Senior Advisor detail in July 2019, M.C., but he noted that the agency never considered the appellant or weighed the advantages or disadvantages of the different courses of action. ID at 59-60.

The administrative judge acknowledged that the OPR Director's "strong negative" opinions about the appellant would have resulted in the DEAA not considering her for the Senior Advisor detail in the summer of 2019. ID at 60. Accordingly, the administrative judge evaluated the basis for the OPR Director's negative comments about the appellant.[9] Importantly, the administrative judge found such a basis "weak,"[10] except for the OPR Director's view that the

---

[9] For example, the OPR Director testified that his comments about the appellant were based on, among other things, some employees expressing to him that they did not like working with her, and his perception she did not get along with "a unit chief or two," that she exhibited hostility due to the decision not to investigate the complaints against the Acting OPR Director, and that she was part of the "factionalization" in OPR. HT 6 at 124, 165-67, 176-78 (testimony of the OPR Director).

[10] The administrative judge noted that the OPR Director was not a direct witness to any alleged negative interactions with the appellant, he did not document any issues, the appellant denied the accusations, and there was no evidence from any of the individuals

appellant was "factionalized" and part of the dysfunction in OPR, but the basis for this view was premised on her April 2018 whistleblowing disclosure and opposition to the decision not to investigate pending complaints. ID at 60-63. The administrative judge determined that the reasons for the OPR Director's negative comments about the appellant were connected to her April 2018 whistleblowing disclosure, and these comments "fill[ed] in an important gap in the agency's process" because it explained why the appellant was not considered for the Senior Advisor detail during the summer of 2019. ID at 62-63. He therefore concluded that this factor favored the appellant. ID at 63.

Regarding the second factor, the administrative judge found that the OPR Director had some motive to retaliate because the disclosure reflected poorly on him and his supervisor, the Executive Administrative Assistant (EAA). ID at 65. The administrative judge also found that the OPR Director "demonstrated [a] strong dislike for the appellant and her impact on OPR," which was related in part to her whistleblowing disclosure. *Id*. The administrative judge further found that there was other evidence of the OPR Director's motive in February 2019. For example, the OPR Director did not respond to the appellant's inquiry about the posted Senior Advisor detail and status of her OPR Mission Support Director position, which suggested that the appellant was interested in returning to OPR and the OPR Director did not want her to return. *Id*. Additionally, the OPR Director kept complaints from the appellant after her whistleblowing disclosure, which suggested that he was bothered by her opposition to the decision not to investigate pending complaints. ID at 65-66. Ultimately, the administrative judge concluded that this factor did not weigh strongly in either direction but favored the appellant. ID at 66.

---

who allegedly complained about the appellant. ID at 61-62. Moreover, there was no evidence of any performance concerns, and the appellant was rated by multiple people as "achieved excellence," which included an evaluation of her management. *Id*.

Regarding the third factor, the administrative judge found that there was an absence of comparator evidence, likely due to the unique circumstances of the realignment and subsequent staffing decisions. ID at 66-67. Accordingly, he concluded that the absence of such evidence meant that the factor was removed from consideration and was a neutral factor. ID at 67 (citing *Karnes*, 2023 MSPB 12, ¶ 36).

The administrative judge weighed the three factors and noted that this issue turned on the burden of proof. ID at 68. He stated that he was "not left with any firm conclusions" on whether the agency would have issued the directed reassignment absent the appellant's April 2018 whistleblowing disclosure. ID at 69. Therefore, he concluded that the agency did not meet its burden. *Id*.

In its cross petition for review, the agency asserts that the administrative judge "invented evidence" and "[i]gnored the overwhelming evidence" regarding the first factor. PFR File, Tab 8 at 24-27. For example, it asserts that the administrative judge erred when he relied on the OPR Director's negative statements to "fill[] in an important gap in the agency's process." *Id*. at 24-25. Instead, the agency asserts that it provided strong reasons for assigning the appellant to the TSA HR Academy position, including, among other things, that the DEAA thought that she was an ideal candidate because of her recent experience, she wanted to stay at her previous detail assignment at DHS on a permanent basis, and the selectee, M.C., had experience in business process improvement and efficiency systems, and she submitted a resume. *Id*. at 25-26. Moreover, the DEAA testified that he did not discuss with the OPR Director the possibility of the appellant serving in the OPR detail assignment, and the "overwhelming evidence established" that the agency would have assigned the appellant to the TSA HR academy in the absence of the OPR Director's comments. *Id*. at 27. Regarding the second factor, the agency asserts that the only motive that matters was the motive of the agency officials "involved in the relevant decision," the OPR Director was not involved in the decision to assign

the appellant to T&D, and the administrative judge erred in considering the OPR Director's motives. *Id*. at 27-28 (emphasis in original).

These arguments are not persuasive. Importantly, the first factor does not apply straightforwardly to this case because the personnel action was not disciplinary in nature and does not require supporting evidence of misconduct; instead, it is appropriate to consider the broader question of whether the agency had legitimate reasons for the directed reassignment and subsequent staffing decisions. *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 23. The initial decision reflects the administrative judge's methodical and thoughtful consideration of the relevant evidence leading up to and including the directed reassignment. ID at 52-63. We agree with the administrative judge's conclusion that the agency's reasons for not placing the appellant in the Senior Advisor detail position during the summer of 2019 were not strong and were largely due to the OPR Director's input, which was based on the appellant's whistleblowing disclosure and opposition to the decision not to investigate the pending complaints. *Id*. Accordingly, we affirm the administrative judge's analysis and conclusion in this regard. *See Crosby*, 74 M.S.P.R. at 106; *Broughton* 33 M.S.P.R. at 359.

Regarding the second factor, the Board has been cautioned against taking too narrow a view of this factor. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012). Indeed, the U.S. Court of Appeals for the Federal Circuit directed the Board to consider any motive to retaliate on the part of the agency officials who ordered the action as well as that of any officials who influenced the action. *Id*. at 1371; *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 14; *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 29 (2014). Therefore, the administrative judge properly considered the OPR Director's motive, and we agree with the administrative judge that this factor favors the appellant because the OPR Director had some motive to retaliate. ID at 65-66; *see Whitmore*, 680 F.3d at 1370-71 (stating that the appellant's

criticisms cast the agency, and by implication all of the responsible officials, in a highly critical light).

Because we agree with the administrative judge that the first two factors weigh in the appellant's favor and the third factor is neutral, we discern no error with the administrative judge's conclusion that the agency failed to meet its burden to prove by clear and convincing evidence that it would have taken the directed reassignment personnel action absent the appellant's April 2018 whistleblowing disclosure. ID at 68-69. We affirm the initial decision in this regard.

<u>The appellant has not shown that she is entitled to corrective action beyond that which the administrative judge ordered.</u>

When the Board finds reprisal based on whistleblowing, it is statutorily authorized to order broad relief, that is, such corrective action "as [it] considers appropriate." 5 U.S.C. § 1221(e)(1); *Gharati v. Department of the Army*, 2022 MSPB 16, ¶ 15. If the Board orders corrective action, such corrective action "may include" that the individual be placed, as nearly as possible, in the position the individual would have been in had the prohibited personnel practice not occurred. 5 U.S.C. § 1221(g)(1)(A); *Gharati*, 2022 MSPB 16, ¶ 15.

As set forth above, the alleged retaliatory personnel actions identified for adjudication in this IRA appeal were (1) the elimination of the appellant's position, in or around November 2018, and (2) her directed reassignment in October 2019. *E.g.*, IAF, Tab 1 at 15, Tab 8 at 13, Tab 11 at 3; ID at 25; PFR File, Tab 4 at 6. The administrative judge found that she met her burden of establishing a prima facie case of whistleblower reprisal only regarding the latter. ID at 41-51. For that October 2019 directed reassignment, he also found that the agency failed to rebut the appellant's prima facie case of whistleblower reprisal. ID at 52-69. This conclusion primarily rests on his determination that the agency did not adequately explain why it selected M.C. over the appellant for the Senior Advisor detail assignment in August 2019, just before the appellant's October

2019 directed reassignment. *Id.* Put another way, the administrative judge determined that, had it not been for whistleblower reprisal, the agency would have selected the appellant for the August 2019 detail instead of directing her reassignment in October 2019.

Accordingly, the administrative judge ordered the agency to correct the appellant's personnel records to retroactively place her in the detail assignment for the period in which it was filled.[11] ID at 70. He further ordered the agency to rescind the October 30, 2019, directed reassignment and to replace it with appropriate documentation reflecting reassignment to the appellant's current position at the end of the detail assignment. ID at 71.

The administrative judge acknowledged that, after the detail, the agency established and advertised a "permanent position in OPR," which was filled by M.C. ID at 22, 56-57, 70. However, he determined that the appellant was not entitled to corrective action placing her in any further positions if she did not apply for them.[12] ID at 70 (citing *Gharati*, 2022 MSPB 16, ¶¶ 19-20). The administrative judge also recognized that, to obtain a promotion as part of an order granting relief, the appellant must either identify a law mandating the promotion or clearly establish that she would have been promoted in the relevant period. ID at 70 n.21 (citing *Dow v. General Services Administration*, 117 M.S.P.R. 616, ¶ 18 (2012)); *see Gharati*, 2022 MSPB 16, ¶ 18 (setting forth that same standard). However, the administrative judge found that the appellant made no such showing. ID at 70 n.21.

---

[11] Neither party explicitly challenges the administrative judge's order for corrective action in this regard, and we affirm the order herein.

[12] We understand that the "permanent position in OPR" was the SV-0343 K-band Supervisory Management and Program Analyst position, and it was also called the OPR Senior Advisor permanent position and the OPR Chief of Staff position. ID at 22; IAF, Tab 9 at 35-40; HT 1 at 14 (testimony of M.C.). The agency does not dispute that this OPR permanent position was a K-band position. PFR File, Tab 8 at 15.

In her petition for review, the appellant asserts that the administrative judge erred in holding that she was not entitled to corrective action as to the permanent OPR position because, among other things, it was not announced in USAJOBS, and the agency prohibited her from applying because it was only available to K-band employees. PFR File, Tab 4 at 6, 12-19. The appellant also provides the following documentation with her petition for review: (1) an August 2020 vacancy announcement showing that the permanent OPR position was advertised as a voluntary lateral reassignment opportunity, which meant that only K-band employees could apply; (2) a May 16, 2023 Decision on Liability in her related Equal Employment Opportunity Commission matter in which a Supervisory Administrative Judge stated that the selectee for the OPR permanent position was "non-competitively selected"; (3) an agency determination in August 2020 that M.C., the selectee for the OPR permanent position, was "eligible and qualified for the non-competitive reassignment"; and (4) a November 25, 2019 email showing that the OPR Director contemplated making M.C. a permanent OPR Senior Advisor.[13]  PFR File, Tab 4 at 21-38, Tab 6 at 37. We are not persuaded by the appellant's arguments, but modify the initial decision as follows to address the appropriate corrective action.

Based on her arguments and evidence about relief, the appellant is essentially asking the Board to correct the agency's reprisal, i.e., her nonselection

---

[13] Under 5 C.F.R. § 1201.115, the Board generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the record was closed before the administrative judge despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 213-14 (1980). The appellant seems to argue on review that we should nevertheless consider the evidence she submitted for the first time on review because she lacked notice that the administrative judge would address the precise nature of relief during the initial proceedings, as opposed to subsequent compliance proceedings. PFR File, Tab 4 at 17-19. We need not further address the timeliness of the newly submitted evidence because we find it unavailing. *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (recognizing that the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision).

for the August 2019 detail in favor of her October 2019 reassignment, by placing her in a permanent K-band position that was not created until May 2020, posted until August 2020, and filled until September 2020. ID at 22; IAF, Tab 9 at 35-40; PFR File, Tab 4 at 21. In addition, she is suggesting that the Board do so despite acknowledging that she did not apply for the lateral K-band position because she was ineligible to apply as a J-band employee. *E.g.*, PFR File, Tab 4 at 5-6. Finally, the appellant is arguing in favor of this additional corrective action, even though her placement in that position would amount to a promotion.

In *Gharati*, 2022 MSPB 16, the Board considered a situation that is in many ways comparable. After finding that an employee's reassignment and removal from a 4-year term appointment as a Fingerprint Specialist were based on whistleblower reprisal, the Board's Final Order instructed the agency to cancel the reassignment and removal, and to retroactively restore the appellant, effective November 2012. *Id.*, ¶ 3. During subsequent compliance proceedings, the administrative judge determined that the appellant's relief must include placement in a permanent Latent Print Examiner position. *Id.*, ¶ 16. The Board disagreed for several reasons. Among other things, the Board found that it would have been impossible for the Final Order to encompass appointment to a vacancy that did not arise until nearly 2 years after the retaliation and was unrelated to and independent from the employee's position at the time relevant to the order. *Id.*, ¶ 17. The Board further explained that, by its very nature, a term appointment expires by a certain date, and an agency is not obligated to offer an employee a permanent or other term position after that expiration. *Id.*, ¶ 18.

Turning back to this case, the detail assignment for which the agency selected M.C. over the appellant was also, by its very nature, temporary. *See Dixon v. U.S. Postal Service*, 64 M.S.P.R. 445, 450 (1994). In addition, the agency created, posted, and filled the permanent K-band position the appellant now seeks well after the matters properly before us in this IRA appeal, i.e., the appellant's nonselection for the detail assignment and directed reassignment.

Further, the administrative judge explained that the permanent position differed from the appellant's prior roles with the agency as well as the original detail assignment that was filled by M.C., ID at 56-57, and the appellant has not given us any reason to conclude differently.

Under these circumstances, we agree with the administrative judge's limited grant of corrective action. Because the administrative judge found that the agency retaliated by directing her reassignment in October 2019 instead of selecting her for a detail assignment in August 2019, corrective action in the form of placement in that detail assignment was appropriate. At the end of that detail assignment, which was temporary by its very nature, the appellant was entitled to return to a permanent position. However, the appellant is not entitled to placement in a permanent position that did not exist at the time of the agency's reprisal, nor is she entitled to placement in a permanent position for which she did not apply. *Gharati*, 2022 MSPB 16, ¶¶ 17, 19. She has also not shown, either below or on review, that she is entitled to promotion. *Id.*, ¶ 18; *Dow*, 117 M.S.P.R. 616, ¶ 18. Thus, we concur with the administrative judge's conclusion that the most appropriate permanent position for the appellant at the end of her detail assignment was the permanent position she already occupies.

To the extent that the appellant is suggesting that the agency might have created and posted the permanent position that went to M.C. differently if the appellant had been in the detail assignment, such that the appellant could have been selected for that position, we will not order corrective action based on those assumptions. *See Gharati*, 2022 MSPB 16, ¶ 20. Similarly, we will not order any other corrective action based upon speculation about ways in which the appellant's career trajectory may have differed if she had been placed in that detail assignment.

**ORDER**

We ORDER the agency to correct the appellant's personnel records to retroactively place her in a detail to a J-Band position as a Senior Advisor in the Office of Professional Responsibility starting in August 2019 and overlapping with the detail to the Senior Advisor position filled at that time. We further ORDER the agency to rescind the October 30, 2019, directed reassignment and to replace it with appropriate documentation reflecting the above detail and a subsequent reassignment to the appellant's current position. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.[14]

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant

---

[14] Thus far, we have no reason to believe that the appellant is due any backpay or other benefits, but we make no findings on the matter at this time.

believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR
### COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet

the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. § 1214(g)(2), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE PARTIES**

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

**NOTICE OF APPEAL RIGHTS**[15]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate

---

[15] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[16]  The court of appeals must <u>receive</u> your petition for

---

[16] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:            _____
                          Gina K. Grippando
                          Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐   1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐   2) Settlement agreement, administrative determination, arbitrator award, or order.

☐   3) Signed and completed "Employee Statement Relative to Back Pay".

☐   4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐   5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐   6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐   7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.